# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NANCY GIVINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-001-R |
| | ) |
| TOMMIE ACKERMAN, JASON BLOSSER, | ) |
| and GREGORY BELL, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment, Doc. 62. Pro se Plaintiff Nancy Givings brings Fourth Amendment claims under 42 U.S.C. § 1983 concerning her 2015 arrest by Defendants, Oklahoma City Police Department ("OCPD") Lieutenant Thomas Ackerman and Sergeants Blosser and Bell. Amended Complaint, Doc. 18. Defendants arrested Plaintiff following a 911 call reporting that Plaintiff had stabbed the caller. Plaintiff had also been driving with an open container and officers suspected her of possessing a PCP-dipped cigarette. Plaintiff claims that Defendants unlawfully arrested her without probable cause and searched her car, and that Defendant Ackerman ignored her requests for a female officer and patted her down in an inappropriate manner. These events were incident to a lawful arrest and reasonable under the Fourth Amendment. The Court therefore grants summary judgment.

## I. Background

Plaintiff Nancy Givings was involved in a dispute among friends that went awry. She visited Jaqueline Smith's house around 3 A.M. on June 27, 2015 to have drinks with

1

Smith and Deitria Oleru. Givings Deposition, Doc. 62-1, at 14–16, 18–19. Before long Givings and Oleru began fighting, and when Givings left to buy beer, Oleru called the cops to report that Givings had stabbed her. *Id.* at 19, 21–24, 27, 30. Givings drove back to Smith's house with an open beer in hand around the same time that OCPD Lt. Ackerman arrived. *Id.* at 25–26. Givings exited her car and started to throw her beer down before deciding against it. *Id.* at 26. Ackerman saw her make a throwing motion and asked her where the knife is and what she threw down. *Id.* at 26–27, 58; Ackerman Report, Doc. 62-4, at 1. He then told Givings to sit down as he spoke to Smith and Oleru, at which point Sergeants Blosser and Bell arrived. Doc. 62-1, at 28, 31–32; Blosser Report, Doc. 62-5, at 2; Bell Report, Doc. 62-6, at 1.

Ackerman instructed Givings to stand up so he could search her, but she repeatedly denied having a knife and asked that he call a female officer to do the search instead. Doc. 62-1, at 32. Ackerman pulled up her boxers and shorts and "went up through [her] legs." Doc. 62-1, at 32–33. Givings did not "know what his intentions" were, and she does not believe he "was trying to feel on [her]." *Id.* at 33. Nor did he "feel and fondle around [her]" or "none of that." *Id.* at 61. However, Givings testified that for a "split-second" to "make sure nothing was there" Ackerman "grabbed," "groped," "touched," and "felt on" her "stuff," her "crotch and boobs." *Id.* at 32–33, 35, 60–62; Formal Citizen Complaint, Doc. 1-1, at 14.

Ackerman conducted a second search shortly after Blossomer handcuffed Givings and placed her in the patrol car. Ackerman reached into Givings's pocket to retrieve the keys to her car; he "felt on" her left hip by the "left pocket and crotch again asking for [her]

2

car keys." Doc. 1-1, at 14; Doc. 62-1, at 40–44. When the keys were not there, Ackerman had Givings step out of the car so he could grab them from her right pocket, and the officers proceeded to search her car. Doc. 62-1, at 38–46.

Ackerman and Bell walked to the area where Ackerman believed he saw Givings throw something and they discovered a PCP-dipped cigarette. Doc. 62-4; Doc. 62-6, at 1; Forensic Report, Doc. 62-7. Oklahoma County charged Givings with possession of a controlled dangerous substance ("CDS"), but later dropped the charge. Doc. 62-8. Bell also checked on Oleru under the paramedics' care—she had a "small cut on her left leg which almost looked like a fingernail scratch" that required staples. Doc. 62-6.

## II. Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court construes all facts and reasonable inferences in the light most favorable to Plaintiff, the non-moving party. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–713 (10th Cir. 2014). Further, because Plaintiff appears pro se, the Court construes her pleadings liberally. *Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994). The moving party bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If satisfied, the burden shifts to Plaintiff, the nonmoving party, to show the existence of a genuine issue of material fact. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). Plaintiff "may not rest upon mere allegations" in her pleading to satisfy this requirement. *Anderson*, 477 U.S. at 256. Rather, Rule 56 "requires [Plaintiff] to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. "[A]ffidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

Defendants assert qualified immunity from Plaintiff's Section 1983 claims. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome Defendants' asserted immunity, "the onus is on [P]laintiff to demonstrate '(1) that the defendant violated a constitutional or statutory right, *and* (2) that this right was 'clearly established' at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the

clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.' . . . This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *al-Kidd*, 563 U.S. at 741; *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

**A. Wrongful Arrest**

Plaintiff's warrantless arrest did not violate the Fourth Amendment because Defendants had at least a reasonable basis to believe there was probable cause to arrest her. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (quoting *Jones*, 854 F.2d at 1210). Even a minor offense committed in an officer's presence provides probable cause for a warrantless arrest. *Quinn*, 780 F.3d at 1006. In assessing probable cause, officers are entitled to rely on un-corroborated victim or witness statements, absent special circumstances, and upon information provided by another officer. *Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010); *United States v. Patane*, 304 F.3d 1013, 1016–17 (10th Cir. 2002), *rev'd on other grounds*, 542 U.S. 630 (2004). Defendants are "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest" Plaintiff, even if they were ultimately mistaken. *Hunter v. Bryant*, 502 U.S. 224, 227–28 (1991). Because probable cause is an objective standard, "an officer's own subjective

5

reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008).

By the time Defendants arrested Plaintiff, they had at least a reasonable basis to believe there was probable cause to arrest her on either of two crimes—assault of Deitria Oleru or, as Plaintiff concedes, driving with an open container in violation of 21 Okla. Stat. § 1220(A). Doc. 62-1, at 26, 27–28, 30, 52 (Plaintiff conceding that Defendant Ackerman saw her getting out of her car with an open container and recounting how Oleru "called the police and told them that [Plaintiff] had stabbed her").[1] Plaintiff's contention that she acted in self-defense and was never charged with assault does not nullify probable cause. *Patane*, 304 F.3d at 1016–17; *Crawford v. City of Kansas City, Kansas*, 952 F. Supp. 1467, 1474 (D. Kan. 1997) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a § 1983 claim based on false arrest is not whether the person arrested actually committed an offense, but whether the arresting officer had probable cause to believe that he had.").

Defendants also found a PCP-dipped cigarette that they had sufficient reason to believe belonged to Plaintiff, but in light of conflicting police reports Defendants now concede that they uncovered the evidence providing probable cause for a CDS-possession charge *after* they arrested her. Doc. 62, at 22; *see* Doc. 62-4, at 1; Doc. 62-5, at 2; Doc. 62-

---

[1] This statement regarding Oleru calling the police to report Givings is admissible non-hearsay because it is offered only to show Defendants' knowledge or belief about what happened before arriving at Smith's house. *See* Fed. R. Evid. 801(c)(2); *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 756 n.20 (10th Cir. 2014).

6

6, at 1;[2] OCPD Forensic Report, Doc. 62-7. Nonetheless, because Defendants had probable cause to believe she committed other crimes at the time of arrest, they are entitled to summary judgment on her Fourth Amendment wrongful arrest claim. Further, to the extent Plaintiff's "false charges" allegations in the Amended Complaint suggest a claim for malicious prosecution, Defendants are also entitled to summary judgment because Plaintiff cannot meet an essential element of the claim that "no probable cause supported the original arrest, continued confinement, or prosecution." *Margheim v. Buljko*, 855 F.3d 1077, 1082 (10th Cir. 2017); Doc. 18, at 3, 5; Doc. 65, at 4–7.

**B. Car Search**

Having established probable cause to arrest Plaintiff, the Court turns to Defendants' search of her car, which was also reasonable under the Fourth Amendment. "Under the automobile exception to the warrant requirement, 'police officers may . . . search a car if they have probable cause to believe it contains contraband, regardless of whether a traffic violation has occurred or a search warrant has been obtained.'" *United States v. Aranda-Diaz*, 623 F. App'x 912, 916 (10th Cir. 2015) (unpublished) (quoting *United States v. Benard*, 680 F.3d 1206, 1210 (10th Cir. 2012)). This is true even if an arrestee is handcuffed in the patrol car out of reach from her car. *Davis v. United States*, 564 U.S. 229, 234–35 (2011); *Arizona v. Gant*, 556 U.S. 332, 343 (2009). Probable cause to believe there is contraband in the car allows officers "to search the entire vehicle, including the trunk

---

[2] The Court only relies on police report evidence resulting "from the officer's own observations and knowledge," not "statements made to the officer by third parties." *United States v. Snyder*, 787 F.2d 1429, 1434 (10th Cir. 1986).

7

and all containers therein that might contain contraband." *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008) (internal quotations omitted).

By the time Defendants allegedly searched Plaintiff's car, they had probable cause to believe she committed assault, a violation of Oklahoma's open container law, and possession of a CDS. Doc. 62-1, at 38–46 (Plaintiff recounting Defendants' search of her car while she was in the patrol car). Ackerman observed that Plaintiff (1) was the sole driver in a car reportedly used to leave the site of the assault, (2) was driving with an open container, (3) did not possess on her the knife allegedly used in the assault, and (4) appeared to toss something in the direction of where Defendants Ackerman and Bell found a PCP-dipped cigarette. Defendants' Undisputed Material Facts 5, 7, 9, 13, 18.[3] When Ackerman arrived at Jacqueline Smith's house around the same time as Plaintiff did, Plaintiff recounts that Ackerman "said, where's the knife at? I said, what knife? He said, where's the knife at and what did you throw down?" *Id.* at 25–29. It is clear that Defendants were looking for contraband in Plaintiff's car, be it the knife, drugs, or alcohol. They were entitled to do so under the Fourth Amendment, and thereby entitled to judgment as a matter of law on Plaintiff's car-search claim.

---

[3] Plaintiff does not comply with Federal Rule 56(c)(1) or Local Rule 56.1(c), which requires that she specifically controvert Defendant's "Statement of Material Facts" by correspondingly numbered paragraph. *See* Response to Motion for Summary Judgment, Doc. 65. Although the Court affords pro se Plaintiff's "filings some leniency, [it has] no obligation to advise [her] of [procedural] requirement[s], for even pro se litigants are expected to 'follow the same rules of procedure that govern other litigants.'" *Keeler v. Aramark*, 418 F. App'x 787, 791 (10th Cir. 2011) (unpublished) (quoting *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). Accordingly, to the extent Defendants' stated material facts rely on admissible evidence and Plaintiff fails to address them specifically in her response, the Court deems them admitted. LCvR56.1(e).

## C. Pat-Down Searches

Plaintiff's last claim presents a close question, whether Defendant Ackerman's two pat-down searches of Plaintiff incident to her arrest were reasonable under the Fourth Amendment. The Court answers this in the affirmative because the bodily intrusion was tailored to uncovering contraband and retrieving Plaintiff's car keys to effectuate a lawful search for evidence.

As a preliminary matter, Plaintiff was not entitled to have Defendant Ackerman heed her request to have a female officer pat her down incident to her arrest. *Stokes v. City of New York*, No. 05-CV-007-JFB-MDG, 2007 WL 1300983, at *12 n.9 (E.D.N.Y. May 3, 2007) (citing unanimous authority on the issue). Ackerman's gender alone, "absent some additional evidence of improper conduct during the search, [does not] convert a lawful search incident to arrest into an unlawful one." *Id.* "To find otherwise would require every police car to carry two officers, one male and one female, so that [arrestees] would be searched by officers of the same sex." *Martin v. Swift*, 781 F. Supp. 1250, 1254 (E.D. Mich. 1992).

Looking next to the nature of Defendant Ackerman's searches, a search incident to arrest is justified not only on "the acknowledged necessity to protect the arresting officer from assault with a concealed weapon," but also to prevent the destruction of evidence, the "fruits of or implements used to commit the crime." *United States v. Robinson*, 414 U.S. 218, 227 (1973); *Preston v. United States*, 376 U.S. 364, 367 (1964). As a result, it can lawfully "involve a relatively extensive exploration of the person" so long as it does not

9

exhibit "extreme or patently abusive characteristics." *Robinson*, 414 U.S. at 227, 236; *see also A.M. v. Holmes*, 830 F.3d 1123, 1151 (10th Cir. 2016).

Assessing the reasonableness of a search incident to arrest requires the Court to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Cases where courts have found a sexually invasive search 'extreme' or 'patently abusive'—and, therefore, unreasonable—generally involve a search where the arrestee's genitalia or buttocks are exposed to the public, or where the officer touches the suspect's genitalia or buttocks under the suspect's clothes." *Castillo v. Austin*, No. 14-CV-00407-MV-LF, 2016 WL 9778187, at *4 (D. N.M. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 9778186 (Sept. 28, 2016), *aff'd sub nom. Castillo v. Las Cruces Police Dep't*, 712 F. App'x 760 (10th Cir. 2017) (unpublished) (quoting *United States v. Edwards*, 666 F.3d 877 (4th Cir. 2011); *Campbell v. Miller*, 499 F.3d 711 (7th Cir. 2007); *Amaechi v. West*, 237 F.3d 356 (4th Cir. 2001)). *Cf. Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) (prohibiting "unreasonable, non-consensual, inappropriate touching and propositioning" that are "abuse[s] of power"). By contrast, when a suspect could reasonably hide contraband in sensitive areas of the body, an officer can—without running afoul of the Fourth Amendment—search those areas to the "degree necessary to perform the search" incident to arrest.[4] *Garcia v. New York State Police Investigator*

---

[4] *See, e.g., Castillo v. Las Cruces Police Dep't*, 712 F. App'x 760, 763 (10th Cir. 2017) (unpublished) (reasonable search when the officer "searched Castillo's pants pockets by placing his hands in Castillo's pockets" and "touch[ed] Castillo's crotch and buttocks with an open palm"); *Himes v. Enid Police Dep't*, No. CIV-15-1084-R, 2016 WL 2354478, at *1 (W.D. Okla. Mar. 30, 2016), *report and recommendation adopted in part, rejected in part*, 2016 WL 1737137 (May 2, 2016) (reasonable search when the "'officer

*Aguiar*, 138 F. Supp. 2d 298, 304 (N.D.N.Y. 2001). *Cf. Fontana*, 262 F.3d at 880 ("[N]ot every . . . sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable.").

Defendant Ackerman's first search of Plaintiff occurred just before he instructed Defendant Blossomer to handcuff Plaintiff and place her in the patrol car. Doc. 62-1, at 32–38. Plaintiff stood facing away from Ackerman and was wearing shorts over boxers. *Id.* at 32–34. Plaintiff's deposition testimony makes it difficult to understand precisely where and how Ackerman searched Plaintiff. He pulled up her boxers and shorts and "went up through [her] legs." Doc. 62-1, at 32–33. Plaintiff did not "know what his intentions" were, and she does not believe he "was trying to feel on [her]." *Id.* at 33. Nor did he "feel and fondle around [her]" or "none of that." *Id.* at 61. However, Plaintiff testified that he "grabbed," "groped," "touched," and "felt on" her "stuff," her "crotch and boobs." *Id.* at 32–33, 60–62; Doc. 1-1, at 14. Ackerman conducted a second search shortly after Blossomer placed her in the patrol car when he reached into Plaintiff's pocket to retrieve the keys to her car. He "felt on" her left hip by the "left pocket and crotch again asking for [her] car keys." Doc. 1-1, at 14; Doc. 62-1, at 40–44.

---

while pat searching [him] felt of [his] front pockets and inner thigh touching [him] wrongfully I felt' [sic] and '[t]hen she put her hand in [his] pockets feeling around in them and touching [him] again in [his] private area'"); *Burke v. Cicero Police Dep't*, No. CIV-07-624-FJS-DEP, 2010 WL 1235411, at *7 (N.D.N.Y. Mar. 31, 2010) (reasonable search when "Defendant Wafer was 'patting and squeezing' her legs and doing the same from 'my breasts on down'").

Plaintiff conceded at the deposition that Ackerman only made contact with Plaintiff's sensitive areas in order to first uncover the knife and then to retrieve Plaintiff's car keys:

> A: He told me to get up . . . and he says, where's the knife?
>
> . . . .
>
> Q: When . . . you say he grabbed your breasts, did he just kind of grab them and then as soon as he figured there wasn't anything there, left?
>
> A: Yeah.
>
> Q: So split-second?
>
> A: Split-second, yeah.
>
> Q: Same thing on what you called the groping. Just a split-second, make sure nothing was there and then moved on?
>
> A: Yeah.

Doc. 62-1, at 32, 35.

In other words, despite that Defendant Ackerman's non-consensual contact made Plaintiff feel "violated," his searches incident to arrest were not "extreme or patently abusive." Doc. 62-1, at 61; *Robinson*, 414 U.S. at 236. Rather, they were reasonable for four main reasons—(1) Plaintiff could have been concealing the pocket knife she allegedly used to stab Oleru, Oleruo Deposition, Doc. 62-2, at 3; (2) there is no evidence that Ackerman touched Plaintiff underneath her clothing; (3) the middle-of-the-night search did not expose her in public; and (4) Plaintiff acknowledged that Ackerman's "split-second" contact was not sexual in nature. Accordingly, Ackerman is entitled to summary judgment on Plaintiff's remaining Fourth Amendment claim.

### III. Conclusion

Defendants are entitled to judgment as a matter of law, and the Motion (Doc. 62) is GRANTED.

IT IS SO ORDERED this 31st day of August 2018.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE